IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

VERNALD L. NISWANDER,

    Plaintiff,

vs.                                                  CASE NO. 1:06CV14-MMP/AK

MICHAEL J. ASTRUE,[1]
**Commissioner of Social Security**

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) filed under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

A.   **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on March 18, 2003, alleging a disability onset date of March 15, 1993, because of high blood pressure, diabetes, macular degeneration, an enlarged heart, and a "fat pad" located between his heart and lung. His date last insured is March 31, 1998, so that the ALJ must determine whether he was disabled on or before this time. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on January 25, 2005, and entered an unfavorable decision on June 30, 2005.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.

This action was transferred from the Middle District of Florida on January 19, 2006.  Despite several attempts to get some guidance from Plaintiff, who is proceeding pro se, about the errors he alleges the ALJ made, the undersigned has only a few statements made by Plaintiff in his handwritten complaint and other letters to support his contention that the ALJ erred.  (Docs. 1, 17 and 20).

B.   **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff suffered from high blood pressure and diabetes, which were severe impairments, but which did not meet the requirements of the Listing of Impairments.  (R. 17).  The ALJ attached great weight to the medical evidence of Plaintiff's treating physician, Dr. Regalado, to find that between the date of onset (March 15, 1993, and date last insured (March 31, 1998) the evidence does not support a disabling impairment that would preclude light work activity.  The latest examination in file dated October 12, 1998, seven months after Plaintiff was last insured for benefits

**No. 1:06CV14-MP/AK**

was "normal" and his hypertension stable. (R. 18). Plaintiff himself testified that he was laid off work, not because he was impaired, and had been taking care of a grandchild at home. (R. 18). Thus, the ALJ found that Plaintiff had the residual functional capacity to perform light work, that he could not perform his past relevant work as a carpenter and construction worker because these jobs required more demanding levels of exertion, but that he could perform a full range of light work and under the Medical Vocational Guidelines he was not disabled. (R. 19).

## C.  ISSUES PRESENTED

Plaintiff contends that the ALJ did not have benefit of all his medical records because Plaintiff's attorney failed to obtain them. (Doc 1 and 17). Specifically, Plaintiff contends that records from ChartOne in Irving, Texas, were not before the ALJ and would have "shown health issues that would eventually lead to [Plaintiff's] current health problems." (Doc. 17). Plaintiff had surgery in December 2005 when eight stints were placed in his groin and upper legs. (Doc. 17).

The government was not required to file a responsive memorandum since Plaintiff did not file a brief.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.  STANDARD OF REVIEW

No. 1:06CV14-MP/AK

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an

**No. 1:06CV14-MP/AK**

adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him

**No. 1:06CV14-MP/AK**

from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E.   **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

The treatment notes of Dr. Manuel F. Regalado show a history from January 11, 1993 to March 13, 2003. (R. 92-175). The medical history during the relevant time period shows treatment for hypertension, Type II diabetes, cardiomegaly, hypogonadism, and some routine issues such as sinusitis and ear infections. Later notes (after his insured status expired) show that his diabetes became uncontrolled with neuropathy and that he reported depression.

More recent treatment notes from Dr. Regalado show additional health issues such as skin problems, anxiety, depression and reports of severe pain occasionally, but most notes state that he is generally doing better. (R. 222-265).

Plaintiff was treated by Dr. George Feussner after his insured status expired for Bell's palsy, shingles and a herpes outbreak. (R. 176-177).

**No. 1:06CV14-MP/AK**

Two Psychiatric Review forms could not be completed because there was no medical evidence of any mental treatment prior to the expiration of his insured status. (R. 178-205)

.      Two Residual Functional Capacity Assessment forms dated April 17, 2003, and July 23, 2003, rate Plaintiff as capable of light exertional levels at the time he was last insured. (R. 206-221). The earlier RFC gave him some postural limitations such as no frequent balancing, stooping, kneeling, crouching or crawling, and no hazardous machinery.

## F.      SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff was 56 years old at the time of the hearing and had completed the 8th grade. (R. 270). He has done mostly construction work and stopped working in 1993 because he was laid off. (R. 273). He was hospitalized five or six times for his heart between 1993 and 1998. (R. 273). His diagnosis was high blood pressure and he had some kidney problems, too. (R. 273).

The vocational expert testified that Plaintiff could no longer perform his past relevant work that was medium exertional level, but that he could perform a number of jobs in the light or sedentary range based on the hypothetical presented to him by the ALJ. (R. 281).

Plaintiff's attorney requested 20 days to get the records of the hospitalizations between 1993 and 1998, which the ALJ agreed to do. (R. 287).

**No. 1:06CV14-MP/AK**

**G.    DISCUSSION**

A person is insured for disability benefits under Title II based on his earnings record and the medical evidence must establish disability prior to the date he is last insured for benefits for him to qualify. 42 U.S.C. §423(a)(1)(A). Plaintiff's earnings record shows no earnings after 1993, except for a minimal amount ($2472) in 2000. (R. 50). Generally, with some exceptions not applicable here, an individual is insured for disability purposes in any month in which he has at least 20 quarters of coverage during the 40 quarters period ending with the quarter in which such month occurs. 42 U.S.C. §§416(i)(3) and 423(c)(1), and 42 U.S.C. §423(c)(1). This means that a claimant must prove his disability existed prior to the last month in which this "20 out of 40" test is met. Therefore, based on the calculations of the administration Plaintiff's insured status expired on March 31, 1998. (See R. 50).

There is no medical evidence in the record of the relevant time period (prior to March 31, 1998) that establishes a disabling impairment. None of the medical records of this time period (or later for that matter) discuss any functional impairments or limitations or make any recommendations of functional limitations or suggest that he cannot work. Whatever his condition is now is immaterial insofar as obtaining benefits because he no longer qualifies for them. Ware v. Schweiker, 651 F.2d 408, 412 n.3 (5th Cir. 1981).

Plaintiff himself is responsible for the difficulty he finds himself in by waiting ten years after his alleged onset date to file an application for benefits. By that time his

**No. 1:06CV14-MP/AK**

insured status had long since expired and proof of a medical condition five years previous was, of course, going to be problematic.  Further, it is the experience of the undersigned in reviewing disability claims that most people who find themselves unable to work because of serious and disabling medical conditions file applications for benefits within a short time of their onset dates, certainly not a decade later.

Finally, insofar as Plaintiff complains that the record was incomplete because his attorney failed to provide the ALJ with his complete medical record, ultimately *he* has the burden of proving his disability during the insured period.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  If his attorney did not provide the records on his behalf, there is no reason whatsoever that Plaintiff himself could not provide the records either after the hearing, before the Appeals Council or when he filed the complaint in this Court.  At the hearing Plaintiff's attorney, in Plaintiff's presence, suggested that these records were from hospitalizations at Shands AGH, which is in Gainesville, Florida, but in the complaint filed Plaintiff complains that his attorney failed to obtain records from ChartOne in Irving, Texas.  There is no explanation for this discrepancy or why Plaintiff was being treated in Irving, Texas, during the relevant time period. Nonetheless, it is curious that none of the records from Dr. Regalado, his treating physician during this time period, refer to these hospitalizations and certainly he would have been informed, if not materially involved, with Plaintiff's treatment, especially if it involved high blood pressure or a heart condition so severe that he was hospitalized for it.  Yet, none of these records refer to these incidents.

**No. 1:06CV14-MP/AK**

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this **13th** day of June, 2007.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:06CV14-MP/AK**